MATTER OF BALBIN

In Section 245 Proceedings

A–19725973

*Decided by Regional Commissioner June 22, 1972*

Since applicant has established only a temporary need for his services as a minister by a religious denomination in the United States, he is ineligible for classification as a "special immigrant" under section 101(a)(27)(D)(i) of the Immigration and Nationality Act and, accordingly, has failed to establish visa availability as required for adjustment of status under section 245 of the Act. Consequently, his application for adjustment of status is denied without prejudice to reconsideration if he can establish that his services as a minister are needed within the meaning of section 101(a)(27)(D)(i) of the Act.

ON BEHALF OF APPLICANT: Richard W. Lowery, Esquire
77 W. Washington Street
Chicago, Illinois 60602

The District Director on May 23, 1972 certified this case to me for review and decision.

A careful review of the record of proceedings discloses that the applicant is eligible pursuant to section 245 of the Immigration and Nationality Act, as amended, for adjustment of status to that of a lawful permanent resident of the United States if "an immigrant visa is immediately available to him at the time his application is approved."

The District Director has denied this application on the ground the applicant does not qualify for "special immigrant" status as contemplated by section 101(a)(27)(D)(i) of the Act. His decision states that the applicant has not furnished "sufficient evidence that your services are needed in the United States. The letter on your behalf submitted by Cardinal Cody indicates your appointment to Our Lady of Lourdes Rectory is only temporary in nature."

The determination that the applicant's services were of a temporary nature is based upon a letter dated June 29, 1971 from the Archdiocese of Chicago reading in part as follows:

...faculties of the Archdiocese of Chicago, in accordance with Canon Law and the regulations of this Archdiocese, are hereby granted you during your

residence at Our Lady of Lourdes Rectory, ... under the direction of the Reverend Thomas J. Goldrick, Pastor, until *June 30, 1972.*" (Emphasis supplied.)

Section 101(a)(27)(D)(i) of the Act classifies the following as a "special immigrant":

an immigrant who continuously for at least two years immediately preceding the time of his application for admission to the United States has been, and who seeks to enter the United States solely for the purpose of carrying on the vocation of a minister of a religious denomination, and whose services are needed by such religious denomination having a bona fide organization in the United States ...

The applicant received his Bachelor of Theology during May of 1965 and was ordained a priest on the 9th of that month. From the time of his ordination until he departed for the United States in 1970 he served as a minister of religion in the Philippines. Since his arrival in this country he has continued his religious education, and has served as an assistant pastor at Our Lady of Lourdes Church. He clearly meets the requirement of the statute regarding carrying on the vocation of a minister for the requisite period immediately prior to his admission; and there is every indication that the applicant intends to carry on that vocation in the United States for his religious denomination.

The remaining question is whether his "services are needed by such religious denomination having a bona fide organization in the United States", as specified in section 101(a)(27)(D)(i) of the Act. Counsel for the applicant points out that this section does not require that the minister's services be *urgently needed,* but merely that they be *needed* by the religious denomination. This the Service concedes. Counsel goes on to state that there is a shortage of priests in the United States and that, therefore, the statutory requirement regarding "need" has been met. We disagree with that contention. The statute clearly indicates that in order to qualify for "special immigrant" classification as a minister, the alien must be "an immigrant who" possesses certain specified qualifications "and whose services are needed" by the religious denomination. Thus the statute is geared to the qualifications and the need for the services of an *individual.* Even if it were conceded that a general shortage of priests exists, this does not establish the need for the applicant's services as a priest.

Counsel also points to a letter issued by the pastor of Our Lady of Lourdes Church describing the ministerial assistance which the applicant has been rendering to him and that church, and expressing the pastor's desire that the applicant's effort to become a permanent resident be facilitated. Counsel states that this also establishes that the applicant's services are "needed", and charges that the District Director's request that the applicant present a

166

letter from the Archdiocese concerning the need for his services is improper under the circumstances. He alleges that this would not be done with respect to other religious denominations which do not have a "church structure" similar to the Catholic Church.

The need for the applicant's services must be established by the appropriate religious authority. As indicated above, the Archdiocese has informed this Service that its "faculties" have been granted to the applicant only until June 30, 1972. The fact that the Catholic Church has a hierarchy cannot be ignored. Faced with a statement from the ecclesiastical superiors of the pastor to the effect that the applicant is authorized to perform his ministerial functions within the Archdiocese only until June 30, 1972, it is our view that the District Director's request for a statement from the Archdiocese concerning the continuing need for the applicant's services is not an unreasonable one, for, if the applicant's authorized services are to be finished by June 30, 1972, it is concluded that the requisite need for his services has not been established within the meaning and intent of the statute. Furthermore, it may be noted, in passing, that the Immigration and Nationality Act contains a provision whereby an organization seeking the temporary services of certain qualified aliens, including a bona fide religious organization seeking the temporary services of a qualified minister, may petition under section 214(c) of that Act for his importation as a nonimmigrant under section 101(a)(15)(H)(i) of the Act.

It is concluded that the applicant is ineligible for classification as a "special immigrant" within the meaning of section 101(a)(27)(D)(i) of the Act. He has not established that an immigrant visa is immediately available to him as a preference or nonpreference immigrant, or otherwise. Accordingly, he is statutorily ineligible for the adjustment of status which he seeks. His application will be denied, without prejudice to reconsideration in the event he is able to establish satisfactorily that his services as a minister are needed by his religious denomination within the United States.

*It is ordered* that the decision of the District Director denying the application for status as a permanent resident be and the same is hereby affirmed.

167